Cornelia B. Hoyt v. Commissioner.
Hoyt v. Commissioner
Docket No. 721.
United States Tax Court
1944 Tax Ct. Memo LEXIS 279; 3 T.C.M. (CCH) 397; T.C.M. (RIA) 44133; April 26, 1944
*279 James R. Sloane, Esq., for the petitioner. B. W. Berg, Esq., for the respondent. DISNEY
Memorandum Opinion DISNEY, Judge: This proceeding involves income taxes for the calendar year 1940. Deficiency was determined in the amount of $417.64, all of which, except a small amount, is placed in issue. The question presented is whether the petitioner properly deducted from income the sum of $4,564.16 as a bad debt. [The Facts] All facts have been stipulated, and by reference we find the facts as so stipulated. Omitting formal parts and exhibits forming a part thereof, but not considered necessary recitals herein, the stipulation reads: "In the year 1929 Isabel H. Sloane, daughter of petitioner, opened a margin account with the brokerage firm of Jas. B. Colgate & Co., 44 Wall Street, New York, New York. "On March 31, 1938, the petitioner, at the request of her daughter, Isabel H. Sloane, obligated herself in writing, to pay any and all losses that the said Jas. B. Colgate & Co. might sustain, by reason of the margin account of Isabel H. Sloane, a copy of which instrument is attached hereto, marked Exhibit "1", and made a part hereof. "At the time petitioner executed the guaranty *280 agreement she knew that the probability was that Isabel H. Sloane could not repay any loss or deficit for which this petitioner might become liable as a result of the execution of said guaranty agreement. "At the time of the execution of said guaranty agreement the said Isabel H. Sloane had no assets of her own that she could deposit as additional collateral for the said margin account, or any other assets out of which a judgment could be satisfied. "After the execution of said guaranty agreement, the said petitioner had no control over the brokerage account guaranteed as aforesaid, and received no notices of any transactions which took place in said account. "On September 16, 1940, the margin account of Isabel H. Sloane with the firm of Jas. B. Colgate & Co. was liquidated with a deficit of $4,564.16. This unpaid balance in the margin account of the said Isabel H. Sloane was paid by a transfer of petitioner's cash held by Jas. B. Colgate & Co. and for which unpaid balance petitioner was liable under the aforesaid guaranty. "Throughout the periods mentioned herein and even prior and subsequent thereto, petitioner has been compelled to contribute to the support of the said Isabel *281 H. Sloane and her family. "Annexed hereto, and marked Exhibit "2", and made a part hereof, is a statement showing all the transactions in the said Isabel H. Sloane's margin account from the date of the execution of the guaranty agreement until its liquidation on September 16, 1940, and also the market prices of the securities in the account, as set forth in the statement. "The amount of $4,564.16, which was transferred from petitioner's account by Jas. B. Colgate & Co. for the purpose of satisfying the deficit in the margin account of Isabel H. Sloane has not been repaid." By the guaranty of her daughter's account, above referred to in the stipulation, the petitioner in substance agreed to hold a brokerage house harmless from, and to pay on demand, any losses on the account carried by the daughter. She gave the brokerage house lien upon any securities or equities they might hold in her own account as collateral security for the daughter's account. Petitioner then knew that her daughter could probably not repay any such guaranteed loss, and that she had no assets. Petitioner had at all times pertinent, and even earlier and later, been compelled to help support her daughter. The *282 petitioner never controlled the account and received no notice of transactions therein. When, in the taxable year, the account was closed at a loss to the brokerage house, petitioner paid the loss as agreed, by transfer of money in her account with the brokerage house to the daughter's account. The petitioner argues that a loss resulting from gratuitous guaranty of a brokerage account constitutes a bad debt deductible in full, and cites ; . The respondent points out that the case involves the relationship between parent and child, that therefore the amount paid out by petitioner was a gift to her daughter, and further, that there was no debtorcreditor relationship. After consideration of the authorities cited and others, we are of the opinion that the position of the respondent should be sustained. There is a rebuttable presumption of gift in such transactions between a parent and child. ; ; . *283 The Shiman case, supra, relied upon by the petitioner guaranteed the account of a brother-in-law, who was then solvent. In , the account guaranteed was that of the petitioner's husband, and the husband's previous market transactions had been so successful as to convince us that there was no donative intent. The wife had, before making the guaranty, been independently advised that there would be no loss. Where, as here, the guaranty was for a daughter, it was incumbent upon the petitioner to prove an agreement with her daughter constituting a debt. Not only is there no such proof, but the record in general negatives the idea of any expectation of collection by the petitioner upon a debt. The daughter had at the time of the guaranty no assets and her mother knew that probably she would lose if the account took a loss. The daughter was already to some degree a charge upon her mother. No effort was made by the petitioner to control the account; on the contrary, she waived, in the guaranty signed by her, all notice of transactions in the account; in other words, it *284 was no part of petitioner's business operations. We are unable in principle to distinguish this case from , where a father transferred securities to his son for pledging on the son's brokerage account, the securities were sold by the broker on the account, leaving the son insolvent, and we held there was not worthless debt, but gift; for here the petitioner, in effect, likewise transferred her securities to the daughter's account, for she, in the agreement of guaranty, gave a lien thereon to secure the daughter's account, and when it was closed out, the loss was paid by a transfer of petitioner's cash held by the brokers, as they had a right to do under the agreement. The petitioner has failed to demonstrate a transaction of debt, or one other than one with donative intent, and has, therefore, not demonstrated error on the part of the Commissioner in the determination of deficiency. Decision will be entered for the respondent.